

**EXHIBIT E**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PEMEX EXPLORACION Y PRODUCCION, | § § § | |
| Plaintiff, | § § | Civil Action No. 4:10-CV-01997 |
| v. | § § | **JURY TRIAL REQUESTED** |
| BASF CORPORATION, ET AL., | § § | |
| Defendants. | § | |

## SECOND DECLARATION OF CESAR DE LA GARZA

I, Cesar De La Garza, declare, pursuant to 28 U.S.C. § 1746, as follows:

1.     This declaration is submitted at the request of counsel for the Plaintiff in the above styled case, PEMEX Exploracion y Produccion (PEP). I hereby express my opinion on certain matters regarding Mexican law. I have formatted this opinion in a question and answer format, in order to more directly address the issues at hand. I have also endeavored to quote Mexican judicial precedent and authorities as would be styled in Mexican legal practice.

**Statement of Qualification**

2.     I am a Mexican Attorney at Law licensed to practice in Mexico with license number 1445687. My complete Curriculum Vitae is submitted with this Declaration.

**Under Mexican law, is there a source of a private right of action to enforce PEP's asserted sovereign property rights under Article 27 of the Mexican Constitution? If so, is there any enabling legislation that grants PEP the power to enforce these sovereign rights?**

3.     The answer to both questions is yes. Under Mexican law, the Nation's sovereign property rights over its hydrocarbons are created and recognized by the

Mexican Constitution. This is the main and originating source of any claim brought by the Mexican State to either assert or enforce these rights. The sovereign property issue has been further addressed by several pieces of "secondary" or enabling legislation. Article 1 of the Regulatory Statute of article 27 of the Mexican Federal Constitution Regarding Petroleum stipulates that

> To the Nation corresponds direct dominion, inalienable and imprescriptible, of all hydrocarbons located within the national territory, including its continental platform and the exclusive economic zone located outside and adjacent to its territorial waters, in deposits or fields, in any of their physical states, including intermediate states, and that compose, accompany or are derived from mineral crude oil.

4.      Furthermore, articles 6.I and 13 of the National Assets Act, stipulate that

> Article 6.- The following are subject to the public dominion regimen of the Federation:
> I. Assets designated in articles 27, fourth[*], fifth and eighth paragraphs; 47, section IV, and 132 of the Political Constitution of the Mexican United States
>
> Article 13.- Assets subject to the public dominion regimen of the Federation are inalienable, imprescriptible, non attachable and shall not be subject to actions of recovery, of definitive or provisional possession, or any other brought by third parties.

5.      PEMEX (and its subsidiaries, including PEP) are responsible for all the activities related to Mexico's hydrocarbons. Articles 2 and 3 of the *Ley de Petróleos Mexicanos* (PEMEX Act), provide that

> Article 2.- The State shall perform the activities that exclusively belong to it in the strategic area of oil, other hydrocarbons and basic petrochemicals, through Mexican Petroleum [PEMEX] and its subsidiary agencies pursuant to the Regulatory Statute of article 27 of the Mexican Federal Constitution Regarding Petroleum and its bylaws.
>
> Article 3.- Mexican Petroleum is a decentralized agency with purposes of production, legal representation and its own assets, domiciled in the Federal District, with the purpose of exploration, operation and other activities referred in the previous article, as well as executing, pursuant to this Act, the central management and strategic direction of the oil industry,
>      Mexican Petroleum may rely on subsidiary decentralized agencies to perform the activities covered by the oil industry.

---

[*] Hydrocarbons

6.    PEMEX Exploracion y Produccion was created by the former PEMEX Organic Act. Even though this piece of legislation was repealed by the new PEMEX Act, the articles addressing the creation of PEP remain in force (as per the third transitory provision of the PEMEX Act).

**Under Mexican law, are PEP's claims pursuant to the "sovereign dominion" clause barred by statutes of limitations?**

7.    No. As stated in my previous declaration, paragraph 6 of article 27 of the Mexican Constitution stipulates that the Nation's dominion over its oil and hydrocarbons is "inalienable and imprescriptible", which means that Mexico's sovereign right may not preclude over time; this includes the government's right to take any action necessary to preserve and/or vindicate said rights, which by extension of the sovereign dominion principle are also inalienable and imprescriptible.

8.    As previously stated, there is judicial precedent holding that through a "direct, historical and teleological[†] interpretation of article 27", "[PEMEX] may perform all administrative, commercial and penal activities necessary to insure that oil becomes one of the foundations of the country's economic development [...] thus preserving the Nation's direct dominion over oil". Therefore, PEP has an inalienable and imprescriptible sovereign right to the property of hydrocarbons, including the right and sovereign authority to exercise any actions, including bringing a lawsuit, to preserve and vindicate its sovereign dominion. *See* Federal Judicial Weekly, Ninth Epoch, Volume XXII, August, 2005, page 1964, *IUS* Registration 177545, as transcribed:

> Registry No.: 177545
> Location:
> Ninth Session
> Court: Collegiate Circuit Courts
> Source: Judicial Weekly of the Federation and Gazette
> XXII, August 2005
> Page: 1964
> Opinion: I.3o.C.71 K
> Isolated thesis

---

† The teleological aspect considers the particular ends or rationale covered by the provision.

Area(s): Common

MEXICAN PETROLEUM [*PETROLEOS MEXICANOS*]. MAY CARRY OUT ALL ADMINISTRATIVE, COMMERCIAL, AND PENAL ACTIVITIES NECESSARY TO ENSURE THAT PETROLEUM IS ONE OF THE BASES OF ECONOMIC DEVELOPMENT OF THE COUNTRY AND TO ENSURE THAT PRODUCTION IS CARRIED OUT JUDICIOUSLY, MAINTAINING COMPREHENSIVE AND SUSTAINABLE DEVELOPMENT AND MAINTAINING DIRECT DOMINION OF THE NATION OVER PETROLEUM IN ORDER TO MEET THE NEEDS OF PRESENT GENERATIONS WITHOUT COMPROMISING THE NEEDS OF FUTURE GENERATIONS. DIRECT, HISTORICAL, AND TELEOLOGICAL INTERPRETATION OF ARTICLE 27 OF THE CONSTITUTION OF THE REPUBLIC.

The many collective historical acts connected to the exploration and production of petroleum must be considered, without doubt, when interpreting the provisions of Article 27 of the Constitution on petroleum, basically the point regarding ownership of the same by the nation, as well as provisions regarding the fact that it must be the Mexican people who benefit from the production of petroleum.  It is feasible that the decentralized agencies created expressly for such purpose may carry out all types of legal actions for the fulfillment of public interest derived from the great wealth that petroleum constitutes.  For such reason the historical events of the past, among other things, must be incorporated, along with the interpretive teleological argument, which is based on the justification of the attribution of a meaning connected with the purpose of the precept, understanding that the statute is a means to an end.  The exclusive production of petroleum by the Mexican Government, regulated by Article 27 of the Constitution, is for the substantial purpose of ensuring comprehensive development of the country regarding which there is public interest consisting of the collective desire to bring about a common benefit derived from such production. Such collective interest constitutes a variety of objectives related to the collective needs of the nation, which must be protected without exception by means of the direct and permanent intervention of the Government. The teleological argument is based on the idea that the legislator was provided with certain objectives (a country governed by rule of law), and the means for attaining such objectives was the statute.  Therefore the latter must be interpreted according to such objectives.  In other words, the interpretation of the law must be based on the fact that all the elements of the legal text have the purpose of producing specific practical and logical effects, such as the aforementioned collective wellbeing, which must result in substantial, manifest economic development brought about by petroleum production.  For that reason, the interpretation of Article 2 of the current Constitution should consider the historical argument and therefore take into account that the defense of the rights of the nation over petroleum was the result of a social movement projected through time, which began with the promulgation of the Constitution of nineteen seventeen. It continued with a series of legislative measures during the governments of the Revolution, and its first phase concluded with the expropriation decree of March eighteen of nineteen thirty-eight. It can thus be deduced that the legal institution of "dominion" used in Article 27 of the Constitution to establish that the nation has the

same over the petroleum is protected by the historical, as well as the present-day, legislative body. And its existence is for the purpose of addressing public, not private, interests, because the eminent domain of the Government consists of the sovereign authority of the latter over its territory, and it is a supreme power over the pertinent territory, thus constituting the power to directly and immediately dispose of the object of such right. For this reason the Government, through its legally competent bodies, in the production of petroleum and derivatives, is not limited to carrying out administrative acts. It may also enter into all types of legal acts, including commercial acts for the proper production of such natural resource for the benefit of society, provided that it does not convey ownership of the same or lose control over production of the resource. Therefore, if it is not demonstrated that there is a legal act that violates such constitutional provision, which must be a governing principle of government activity, there is no nullity to be declared by the competent legal authority.

THIRD COLLEGIATE CIVIL COURT OF THE FIRST CIRCUIT

Direct *amparo* 733/2004. Distribuidora Central de Diesel de Vallarta, S.A. de C.V., et al. February 10, 2004. Unanimous vote. Judge writing for the opinion of the court: Neofito Lopez Ramos. Secretary: Oscar Rolando Ramos Rovelo.

### Is there any authority under Mexican law interpreting article 27?

9.     Yes. For purposes of the issues raised in the present case, there are several judicial opinions that interpret the scope of the sovereign dominion clause of article 27. The underlying principle contained in these precedents is that, considering that Mexico's oil and hydrocarbons are a fundamental part of the country's development, the institutions responsible for exercising Mexico's sovereign rights over its hydrocarbons, mainly PEMEX and its subsidiaries (including PEP), may exercise any action necessary to preserve and/or vindicate said rights, which by extension of the sovereign domain principle are also inalienable and imprescriptible. *See* Federal Judicial Weekly, Ninth Epoch, Volume XXII, August, 2005, page 1964, *IUS* Registration 177545 (see ¶8 *supra*); Federal Judicial Weekly, Fifth Epoch, Volume LXII, December, 1939, page 3021; *IUS* Registration 329831, Id. 808654, as transcribed:

Registry No.: 329831
Fifth Epoch
Isolated thesis
Instance: Third Chamber
Source: Federal Judicial Weekly

Volume: LXXXIX
Area (s): Constitutional, Administrative
Page: 804

SUBSOIL PETROLEUM, DIRECT DOMINION OF THE NATION
OVER IT.

Subsoil petroleum belongs to the nation, which, according to express
mandate of the constitutional framers, exercises direct dominion over the
same, which is unique, incompatible with any other, inalienable or
imprescriptible, against which no other private ownership may be alleged.
To put forth the question of ownership of unproduced petroleum,
notwithstanding the content of Article 27 of the Constitution under
subsection VI, is to attempt to establish that the Judicial Branch should
judge the authority of the Constitutional Assembly, which is inadmissible
considering the most rigorous judicial criticism.  If, notwithstanding the
categorical statement of the referenced constitutional precept, the intention
is to invoke ownership deeds, obtained prior to the promulgation of the
Constitution, over petroleum reservoirs and invoke the theory of acquired
rights, it must be stated that any laws intended to link the owner of surface
rights to petroleum reservoirs did not allocate any right to the aforesaid
owner of surface rights.  In this respect, it should be added that the
Supreme Court of Justice of the Nation in various decisions has only
recognized the right of owners of surface rights to explore and produce
subsoil resources, but has never ruled that ownership of the unproduced
petroleum belongs to them.  Furthermore, several courts of the United
States have reached the same decision.

Direct civil *amparo* 2976/42. Compañia Fundidora de Fierro y Acero de
Monterrey, S.A. and co-petitioners. July 23, 1946. Three unanimous votes.
Dissenting votes: Carlos I. Melendez and Hilario Medina. The publication
does not indicate the name of the justice writing for the opinion of the
court.

Registry No.: 808654
Fifth Epoch
Instance: Second Chamber
Source: Federal Judicial Weekly
Volume: LXII
Area(s): Administrative
Page: 3033

SUBSOIL PETROLEUM, DIRECT DOMINION OF THE NATION
OVER IT.

Subsoil petroleum belongs to the nation, which, according to express
mandate of the Constitutional Congress, exercises direct dominion over the
same, which is unique, incompatible with any other, inalienable, and
imprescriptible, against which no other private ownership may be alleged,
even if alleged to have been acquired prior to the promulgation of the
Constitution.  To sustain the contrary would be tantamount to admitting
that the nation is structured with the restrictions of any private interest that
may be alleged, which would constitute an insurmountable obstacle for the
progress, harmonious relations, and contentment of a sovereign people.  In

this respect, it must be stated that the Constitution does not have a precedent. The entity of rights acquired prior to its promulgation does not matter; it is the sovereign will of a people through the Framers of the Constitution, the genuine agencies of their representation, which established the statutes of political and social harmonious relations, responsible only to the judgment of history. To put forth the question of dominion of subsoil petroleum, notwithstanding the content of Article 27 of the Constitution under subsection VI, is to attempt to establish that the Judicial Branch should judge the authority of the Constitutional Assembly, which is inadmissible considering the most rigorous judicial criticism. If, notwithstanding the categorical statement of the referenced constitutional precept, the intention is to invoke ownership deeds, obtained prior to the promulgation of the Constitution, over petroleum reservoirs and invoke the theory of acquired rights, it must be stated that any laws intended to link the owner of surface rights to petroleum reservoirs, did not allocate any right to the aforesaid owner of surface rights. In this respect, it should be added that the Supreme Court of Justice of the Nation in various decisions has only recognized the right of owners of surface rights to explore and produce subsoil resources, but has never ruled that ownership of the unproduced petroleum is theirs. Furthermore, several courts of the United States have reached the same decision. From all this it can be concluded that if the competent authority did not recognize any right of ownership for the claimant companies related to the unproduced petroleum, whose ownership never could have been conveyed by the Government, their rights were not violated.

Administrative *amparo* in review 2092/39. Compañía Mexicana de Petroleo El Aguila, S.A. and co-petitioners. December 2, 1939. Four unanimous votes, and by a majority of three with regard to the fourth ruling. Justice Agustin Gomez Campos did not intervene in this matter, since the impediment submitted to the consideration of the Court was qualified to be legal. Dissenting vote: Jose Maria Truchuelo. The publication does not indicate the name of the justice writing for the opinion of the court.

**Are PEP's claims in this case for "illicit acts"? If so, what would be the grounds/authority for such claims under Mexican law? Would these claims be barred by statutes of limitations? What is the "continuing damages" doctrine? Does it apply in this case?**

10.    Article 1830 of the Federal Civil Code provides that:

Illicit is an act contrary to public order laws or to good customs.

Article 1910 of the Federal Civil Code provides that:

Whoever causes damage to another, acting illicitly or contrary to good customs, is obligated to repair it, unless it is proven that the damage was produced as a consequence of the victim's inexcusable fault or negligence.

- 7 -

11.    The Mexican Supreme Court has held that "[t]he concept of illicit acts includes all actions or omissions performed unduly, intentionally or maliciously, as well as those performed with fault; this is, with imprudence, negligence, a lack of foresight or care, causing damages or losses to third parties". Hence, all actions contrary to a specific statute, or of such a nature that they are committed without any legal right, or in any way imprudently and/or negligently, intentionally or not, may be considered illicit for purposes of damages claims in Mexico. *See* Federal Judicial Weekly, Seventh Epoch, Volume 83 7th part, November, 1975, page 13, *IUS* Registration 245811, as transcribed:

> Registry No.: 245811
> Isolated thesis
> Area(s): Civil
> Seventh Epoch
> Instance: Auxiliary Chamber
> Source: Federal Judicial Weekly
> Volume: 83 Seventh Part
> Thesis:
> Page: 13
>
> Genealogy: 1975 report, third part, Auxiliary Chamber, page 64
>
> ILLICIT ACTS.
> Pursuant to article 1910 of the Civil Code for the Federal District, that is identical to article 1843 of the Civil Code of Veracruz, the concept of illicit acts includes all actions or omissions performed unduly, intentionally or maliciously, as well as those performed with fault; this is, with imprudence, negligence, a lack of foresight or care, causing damages or losses to third parties.
>
> Direct *amparo* 3982/70. Ingenio Zapata, S.A. November 13, 1975. Unanimity of four votes. Presiding: Livier Ayala Manzo. Secretary: Leonel Castillo Gonzalez.

12.    Under Mexican law, statutes of limitations for claims of damages caused by illicit acts are governed by the general rules of negative prescription, as provided by articles 1135, 1136, 1158 of the Federal Civil Code:

> Article 1135.- Prescription is a method of acquiring rights or liberating obligations, by the passage of time and under the terms established by law.

Article 1136.- The acquisition of goods by virtue of possession is called positive prescription; the liberation of obligations by failure to claim performance is called negative prescription.

Article 1158.- Negative prescription occurs by the passage of time established by law.

13.   Article 1159 of the Federal Civil Code provides that

Apart from the cases of exception, a period of time of ten years is needed, counted from the time an obligation could have been demanded, for the right to claim said obligation to expire.

14.   When damages are caused by an illicit act that is an offence punishable by imprisonment (felony), then the statutes of limitations will follow the general 10 year rule established by article 1159 of the Federal Civil Code. *See* Federal Judicial Weekly, Seventh Epoch, Volume 28 7th part, April, 1971, page 67, *IUS* Registration 246215;  Federal Judicial Weekly, Fifth Epoch, Volume CXXVII, February, 1956, page 513, *IUS* Registration 293825, as transcribed:

Registry No.: 246215
Isolated thesis
Area(s): Civil
Seventh Epoch
Instance: Auxiliary Chamber
Source: Federal Judicial Weekly
Volume: 28 Seventh Part
Thesis:
Page: 67

Genealogy: 1971 report, third part, Auxiliary Chamber, page 85

STATUTES OF LIMITATIONS. THE ACTION OF CIVIL LIABILITY RESULTING FROM ILLICIT ACTS THAT ARE FELONIES, EXPIRES IN TEN YEARS STARTING FROM THE TIME THE CORRESPONDING OBLIGATION COULD HAVE BEEN DEMANDED.
To determine the period in which statutes of limitations operate for an action to claim civil liability resulting from illicit acts that are felonies, what is provided to this respect in the Civil Code must be considered. Article 1159 provides that: "apart from the cases of exception, a period of time of ten years is needed, counted from the time an obligation could have been demanded, for the right to claim said obligation to expire", and article 1161 stipulates that: "in two years expire: V. The civil liability resulting from illicit acts that do not constitute felonies". Both provisions are contained in the chapter titled "On statutes of limitations". Further in the Code, in the chapter titled "On obligations that stem from illicit acts", article 1934 provides that: "a cause of action resulting from any of the acts referred to in

- 9 -

this Chapter shall be barred after two years from the date that the damage occurred". Now then, given the broadness of article 1934, we have the aforementioned articles 1161 paragraph V and 1159 that, even if at first glance would seem to be contradictory with the former precept, they actually complement each other establishing a harmonious system, which is what should characterize the Law and its fair interpretation. It is known that legal provisions must be interpreted in accordance with the rules of legal hermeneutics, so that they may all be applicable, because for this purpose they were decreed by the legislators. Pursuant to this, we observe that within the genre "illicit acts" are included those that constitute one of its species: felonious illicit acts, crimes, or simply felonies; this is revealed by the text of article 1161, when its paragraph V speaks of illicit acts that are not felonies. But we must additionally observe that while it is true that all felonies are illicit acts, the contrary affirmation is not correct because, we insist, the genre is "illicit act" and the species is "felony". The clear terms of article 1161, paragraph V, speaks on the one hand of the confirmation of article 1934 with regards to the term limit for the action resulting from illicit acts, which is generally two years; but, on the other hand, it establishes the exception to the rule, because it expressly defines as a special case subtracted from the rule contained in article 1934, when dealing with illicit acts that are felonies, because precisely paragraph V refers to illicit acts that "do not constitute felonies". Hence, to the contrary, this paragraph provides that actions resulting from illicit acts that are felonies do not expire in two years.

Direct *amparo* 7556/66. Estate of Jose Garcia Fernandez. April 14, 1971. Five votes. Presiding: Alfonso Lopez Aparicio.

Registry No.: 293825
Isolated thesis
Area(s): Penal, Civil
Fifth Epoch
Instance: First Chamber
Source: Federal Judicial Weekly
Volume: CXXVII
Thesis:
Page: 513

Genealogy: 1956 report, First Chamber, page 80

CIVIL LIABILITY RESULTING FROM ILLICIT ACTS THAT ARE FELONIES, STATUTES OF LIMITATIONS.
It is known that legal provisions must be interpreted in accordance with the rules of legal hermeneutics, so that they may all be applicable, because for this purpose they were decreed. Pursuant to this idea, we observe that it is true that within the genre "illicit acts" are included those that constitute one of its species: felonious illicit acts, crimes, or simply felonies; this is revealed by the text of article 1161, when its paragraph V speaks of illicit acts that are not felonies. But we must additionally observe that while it is true that all felonies are illicit acts, the reverse affirmation is not correct because, we insist, the genre is "illicit act" and the species is "felony". But the clear and definitive terms of article 1161, paragraph V, of the Civil Code are eloquent because precisely said paragraph V establishes, on the one

hand, the confirmation of article 1934 with regards to the term limit for the action resulting from illicit acts, which is generally two years; but, on the other hand, it establishes the exception to the rule, because it expressly defines as a special case subtracted from the rule contained in article 1934, when dealing with illicit acts that are felonies, because paragraph V refers to illicit acts that "do not constitute felonies". Hence, to the contrary, this paragraph provides that actions resulting from illicit acts that are felonies do not expire in two years. In these conditions, it is clear that the general rule on statutes of limitations established in article 1159 must be respected; meaning that the statute of limitations will operate in ten years, counted from the time the obligation could have been demanded.

Direct *amparo* 764/54. By decision of the First Chamber, issued on June 8, 1953, the name of the appellant is not mentioned. February 10, 1956. Five votes. Presiding: Agustin Mercado Alarcon.

15.    Under Mexican law, the purchase of stolen goods is a felony. Article 400.I of the Federal Penal Code provides that

Imprisonment of three months to three years and a fifteen to sixty days fine shall be imposed on whoever:
I.- With intent of profit, after a felony has been committed and without participating in it, acquires, receives or hides the proceeds of the felony with knowledge of this circumstance.
If whoever received the thing in purchase, pledge or any other concept, had no knowledge of the illicit origin of the thing, by cause of not having taken the indispensable precautions to ensure that the person from which the thing was received had a right to dispose of it, the penalty shall be lessened no more than half.

16.    Therefore, notwithstanding the imprescriptible nature of PEP's actions, claims for damages caused by illicit acts considered felonies under Mexican law, preclude in 10 years, as per the rule contained in article 1159 of the Federal Civil Code.

17.    Additionally, judicial precedent has created the doctrine of "continuing damages", by virtue of which, if damages are caused in several successive acts, it is from the date on which damages cease to be caused that statutes of limitations begin to run. The rationale behind this doctrine stands on the grounds that when damages are not caused in one single act, but in a continuous process, the term for exercising the corresponding action should be calculated when the process ends. There are various judicial decisions which address the continued damages principle: *See* Federal Judicial Weekly, Fifth Epoch, Volume CXXVIII, April, 1956, page 295, *IUS* Registration 339359; Federal Judicial Weekly, Sixth Epoch, Volume LX 4th part,

June, 1962, page 74, *IUS* Registration 270738; *Id.*, page 75, *IUS* Registration 270739; Federal Judicial Weekly, Sixth Epoch, Volume II 4th part, August, 1957, page 60, *IUS* Registration 800886, as transcribed:

Registry No.: 339359
Isolated Thesis
Area(s): Civil
Fifth Epoch
Source: Federal Judicial Weekly
Volume: CXXVII
Page: 295

DAMAGES, STATUTES OF LIMITATIONS FOR THE ACTION OF.
Article 1934 of the Civil Code for the Federal District provides that: "the action to demand reparation of damages, in the terms of the present chapter, expires in two years from the date on which the damage was caused." This provision undoubtedly refers to damages caused totally, not to the different manifestations of the damaging process. Pursuant to this train of thought, if the damage which reparation is being claimed is, by its nature, produced in a single act, the action demanding reparation must be carried out within a term of two years, which shall begin to run from the date on which the damage was caused; but when damages are not caused in one single act, but are produced by a continuous process of successive intervals (*tracto sucesivo*), the term for exercising the corresponding action begins to be calculated when the process ends.

Direct *amparo* 6332/54. Francisco Olmos, April 30, 1956. Unanimous five vote decision. Presiding: Gabriel Garcia Rojas.

Registry No.: 270738
Isolated thesis
Area(s): Civil
Sixth Epoch
Instance: Third Chamber
Source: Federal Judicial Weekly
Volume: Fourth Part, LX
Thesis:
Page: 74

DAMAGES, STATUTES OF LIMITATIONS IN CASE OF.
It is evident that, if according to article 1934 of the Civil Code for the Federal District and Federal Territories, the action to demand reparation of damages caused under the terms of chapter V, title one, part one of book four of that code, expires in two years starting from the date on which the damages were caused, the statute of limitations cannot begin to run when the damages begin to be caused but until the damages have stopped being caused.

Direct *amparo* 5869/59. Armando Arbesto and co-aggrieved. June 28, 1962. Five votes. Presiding: Mariano Azuela.

See: Appendix of the Federal Judicial Weekly 1917-1985, Part Four, Third Chamber, fifth thesis related to jurisprudence 117, page 354, under "DAMAGES, STATUTE OF LIMITATIONS IN CASE OF".

Registry No.: 270739
Isolated thesis
Area(s): Civil
Sixth Epoch
Instance: Third Chamber
Source: Federal Judicial Weekly
Volume: Part Four, LX
Thesis
Page: 75

DAMAGES, STATUTE OF LIMITATIONS IN THE EVENT OF.
The party that offers a defense of statutes of limitations, must show that the time provided by law to that effect has elapsed, proving the starting point, which cannot be, in any case, the date or time on which the damages began to be caused, but when they have stopped being caused. From this perspective, it corresponds to the party that proposed the defense to demonstrate the date on which the statute of limitations began to run.

Direct *amparo* 5869/59. Armando Arbesto and co-aggrieved. June 28, 1962. Five votes. Presiding: Mariano Azuela.

See: Appendix of the Federal Judicial Weekly 1917-1985, Part Four, Third Chamber, fifth thesis related to jurisprudence 117, page 354, under "DAMAGES, STATUTE OF LIMITATIONS IN CASE OF".

Registry No.: 800886
Isolated thesis
Area(s): Civil
Sixth Epoch
Instance: Third Chamber
Source: Federal Judicial Weekly
Volume: Part Four, II
Thesis:
Page: 60

CONSTRUCTIONS, DAMAGES CAUSED BY (STATUTE OF LIMITATIONS).
The statute of limitations for a claim of damages caused by a construction cannot run while said damages, which occur in successive intervals, continue to be produced. In effect, a fair interpretation of article 1934 of the Civil Code leads to the conclusion that, when dealing with damages that are produced in a continuous or progressive manner, their very nature of continuity makes it so that the damages are indivisible with respect to their generation, therefore not allowing the calculation of time limitations until all the damages have been caused. If, as the transcribed provision states, the term is counted from the date on which the damages have been caused, it

cannot be affirmed that they were integrally created when they are still being caused. It would be impossible to disconnect all the damages in order to determine which ones are being produced at any given moment, and specify the multitude of limitation statutes corresponding to each part of the damages caused.

Direct *amparo* 6643/56. Dolores Aguayo de Velasco. August 26, 1957. Unanimous four vote decision. Presiding: Gabriel Garcia Rojas.

18.    Hence, even if the Nation's hydrocarbons (or any rights or claims thereof) were not inalienable and imprescriptible (which is not the case), if they were systematically stolen and illegally sold/purchased in various and continuous acts, it would entail that the statutes of limitations for any ensuing claim would run from the time the last damaging act took place (when the damages stopped being caused).

> **Under Mexican law, are there any other actions or resources available to remedy any damages or torts affecting Mexico's sovereign property, specifically the sale/purchase of stolen hydrocarbons?**

19.    The definition of "illicit acts" provided by article 1830 of the Federal Civil Code (see ¶10 *supra*) naturally covers felonies. Hence, any reparative action stemming from a felony would also assist PEP. Article 20, section A, paragraph I of the Mexican Constitution stipulates that criminal (penal) proceedings have the purpose of "elucidating the facts, protect the innocent, procuring that the guilty does nor remain unpunished, and that the damages caused by a crime are repaired. The Mexican Supreme Court has interpreted this constitutional clause to include all damages and losses suffered by the victim of a crime when "restoration" is sought. *See* Federal Judicial Weekly, Ninth Epoch, Volume XVI, November, 2002, page 160, *IUS* Registration 185503, as transcribed:

Registry No.: 185503
Ninth Epoch
Area(s): Criminal
Instance: First Chamber
Source: Federal Judicial Weekly
Volume: XVI, November of 2002
Thesis: 1a./J. 51/2002
Page: 160

REPARATION OF DAMAGES. INCLUDES THE LOSSES CAUSED DIRECTLY BY THE PERPETRATION OF THE CRIME.

- 14 -

Articles 33, paragraph II, of the Penal Code of the State of Baja California, and 27, paragraph II of the Penal Code of the State of Campeche, regulate the concept of reparation of damages, referring also to the losses suffered by the victim; by which, pursuant to these provisions, when resolving on said reparations, if applicable, the Judge must sentence the defendant to indemnify for the losses suffered directly by the victim because of the crime committed, because to consider that these concepts must be claimed trough a civil action, would limit the interpretation of the aforementioned provisions in detriment of the victim, leaving aside the ample protection the legislators intended for the victim in a criminal process; consequently, if the bodily injuries inflicted on the victim were of such a magnitude that they impeded the daily labor activities of the victim, thus loosing the corresponding wages, these losses are a direct consequence of the illicit act, the repair of which must form part of the sentence, notwithstanding that ordinary civil legislation in these States regulate the obligations that stem from illicit acts, in as much as said legislation is directed towards a legal relationship that is characterized by claims amongst individuals, that may me sought by the victim when he does not wish to press criminal charges, but does not wish to carry the damages and losses produced by the illicit conduct; or against third parties who are subsidiarily liable for the defendant; but this in no way excludes the obligation that, in criminal matters, the law imposes on Judges and Prosecutors. This is corroborated by the current text of article 20, section A, paragraph I, and section B, paragraph IV, of the Federal Constitution, by which the right of the victim to have the damages caused by the crime repaired is elevated to constitutional rank, obligating the Prosecutor to act on the process to enforce this right, thus attaining that in all criminal proceedings the victim has a right to monetary compensation, for the damages, as well as all losses caused by the crime. Additionally, it must be considered that the Constitutional Congress regulated, narrowly connected, the preventive and indemnificatory purposes of the criminal process, on requiring for the release of the defendant pending process, a guarantee sufficient to cover the damages and losses of the victim, which confirms that, at present, in all criminal proceedings the right of the victim to be indemnified for the damages and losses suffered by the crime must be protected, by virtue of which the protection of rights of the victim are recognized as having the same rank as the rights of the accused, thus reconciling an agile way of repairing the damages caused by the crime.

Contradiction of thesis 2/2002.PS. Between the theses sustained by the First Collegiate Tribunal for the Fifteenth Circuit and the Second Collegiate Tribunal for the Fourteenth Circuit. May 8, 2002. Five votes. Presiding: Olga Sanchez Cordero de Garcia Villegas. Secretary: Leticia Flores Diaz.

Jurisprudence thesis 51/2002. Approved by the First Chamber of this High Tribunal, in session held on July 10, 2002, by unanimity of five votes of the Justices: Juan N. Silva Meza, Juventino V. Castro y Castro, Humberto Roman Palacios, Jose de Jesus Gudiño Pelayo and Olga Sanchez Cordero de Garcia Villegas.

20.    Additionally, PEP may exercise an action to recover the hydrocarbons; and given the inalienable and imprescriptible nature of the rights over said hydrocarbons, if PEP were to exercise a recovery claim through a Mexican law action called *acción reivindicatoria*, PEP's action would not be barred either by prescription (statutes of limitations), or any right prescribed by the law in favor of individuals (Mexico's sovereign dominion supersedes any particular property claim). *See* Federal Judicial Weekly, Fifth Epoch, Volume CXXV, August, 1955, page 1621, *IUS* Registration 339977, as transcribed:

> Registry No.: 339977
> Isolated thesis
> Area(s): Civil
> Fifth Epoch
> Instance: Third Chamber
> Source: Federal Judicial Weekly
> Volume: CXXV
> Page: 1621
>
> ACTION FOR RECOVERY.   NOT SUBJECT TO STATUTE OF LIMITATIONS
> Given that the right to ownership is unlimited with regard to time, judicial logic reaches the conclusion that such right is not extinguished by the passage of time, and, therefore, the action for recovery dedicated to protect it is not subject to the statute of limitations.
>
> Direct civil *amparo* 3867/54. Guerra Manuel C. August 22, 1955. Five unanimous votes. Presiding: Gilberto Valenzuela.

I declare, under penalty of perjury under the laws of the United States of America and the State of Texas, that all the foregoing is true and correct. This declaration was executed on July 8, 2011, in Monterrey, Nuevo Leon, Mexico.

_____
CESAR DE LA GARZA

## Curriculum Vitae

**Cesar De la Garza**

Fischer & De la Garza, SC
P. Villas de San Jerónimo 106-5
Colinas de San Jerónimo
Monterrey, N.L., México 64630
Tel. +52(81)8152-2107
Fax +52(81)8152-2153
Email: cesardlg@att.net.mx

Education

- Masters of International Commercial and Trade Law, Summa Cum Laude, by the Monterrey Institute of Technology and Advanced Studies (ITESM), Monterrey, NL, Mexico, 1999
- Diploma in Commercial Law for the NAFTA Region, by the ITESM, 1996
- Law Degree (JD equivalence), by the University of Nuevo Leon, Monterrey, NL, Mexico, 1986, Honors

Summary of Professional skills and/or expertise

- Field of expertise:  Civil, Business and International Trade Law
- Credentials or professional training relevant to expertise:
  o Law Degrees (as described in the Education chapter)
  o Legal practice since 1986, focused on litigation in civil, commercial and international transactional matters
  o Commercial and trade law advisor for private and public entities
  o Membership in two Bi-national Committees integrated by government officials from the United States of America and Mexico, responsible for recommending policy in a series of topics including trade between Mexico and the U.S. (US-Mexico Border Governor's Conference and the US-Mexico Bi-national Group on Border Issues)
  o International Trade Law Professor at the ITESM Law School, in Monterrey, Mexico
  o Member of the inter-governmental worktables in charge of developing the concept of "Strategic Bonded Areas" and the legislative initiatives necessary to operate them
  o Drafting of the General Rules governing Strategic Bonded Areas (Foreign Trade Zones), issued by the Mexican Treasury Department (Customs Service)

- o   Special advisor to the Mexican Senate on international trade issues (200-2003)
- o   Special advisor to the International Trade Subcommittee of the Mexican House of Representatives (2000-2003)

Summary of relevant work experience

- From October 2006 to date, partner at Fischer & De la Garza, S.C., a law firm located in Monterrey, Nuevo Leon, Mexico. Practice focused on complex litigation (civil, commercial, administrative) and international legal consulting.

- From August 1995 to September 2006, partner at Juristas Asesores, S.C., a law firm located in the City of Monterrey, Nuevo Leon, Mexico. The firm's main area of practice is International Commercial Law. My individual practice focused on foreign trade, commercial litigation, administrative law, foreign investment issues and international corporate law (contracts, mergers and acquisitions).

- From August 3, 1998 to October 31, 2003, General Counsel of the Trust for the Development of Northern Nuevo Leon (FIDENOR), with main offices in the State capital Monterrey. FIDENOR is a State Government Agency responsible for the regional planning and economic development of Nuevo Leon's border with the U.S.A., in charge of the creation and implementation of programs intended to attract investment to the region. My responsibilities included: Legal advisor to the Trust's Technical Committee, which is the governing body of the agency; project finance planning; procurement and allocation of funds for regional development infrastructure (roads, railroads, electric plants, natural gas exploration and extraction, alternative energy source management, water treatment facilities, etc.).

- From August 1995 to August 1997, Research Fellow at the Law Center for Inter-American Free Trade, a think-tank of the Monterrey Institute of Technology and Advanced Studies *JURICI*, in charge of analyzing issues affecting trade policy in the Americas. My main area of research was foreign investment policy and regulation. One of my main achievements during my tenure was participating as an expert in the first arbitration process pursuant to NAFTA Chapter XI –Investment– (Metalclad v. United Mexican States).

- From October 1990 to August 1995, General Counsel of the INLOSA Group, with corporate offices in Nuevo Laredo and Reynosa, Mexico (along the Mexico-US border). INLOSA is a business consortium dedicated mainly to industrial development projects and international financing. My responsibilities included: Legal advisor to the Board of Directors, corporate planing, international contracts, mergers and acquisitions, finance projects, labor issues, government procurement and general legal advisor to the Group's companies.

2

Expert Witness Experience (Mexican Law)

- United States District Court Southern District of Texas Laredo Division, El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc. *See El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.,* 344 F. Supp. 2d 986 (S.D. Tex. 2004).

- Orange County Superior Court, El Pollo Loco, Inc. v. Arch Specialty Insurance Company (06CC07392).

Academic Experience

- Professor of Alternative Dispute Resolution and Legal Framework for International Business, International Commercial Law Graduate Program, Monterrey Institute of Technology and Advanced Studies *ITESM*
- Professor of Civil Law at the *ITESM* Law School
- Professor of Contemporary Legal Systems at the *ITESM* Law School (English course for visiting students)
- Professor of Alternative Dispute Resolution for the International Trade Diploma program offered by the Inter American Trade Law Center at *ITESM*
- Frequent speaker on trade related issues

Publications:

- *The New Strategic Bonded Area Customs Program,* Iustitia Magazine, ITESM Law School, Spring Issue, Mexico, 2004.
- *A New International Legal Framework for Investment,* Iustitia Magazine, ITESM Law School, Fall Issue, Mexico, 2004.
- *Bonded Processing Zones: Is A Special Bonded Processing Zone Best For You?,* Twin Plant News, August 2004, Vol. 20 No. 1.
- *Strategic Bonded Zones: The new logistics paradigm,* Comercio Exterior Magazine, Bancomext, Vol. 55, No. 5, May, 2005.

Member of

- Mexican Bar Association
- IUSTITIA Magazine (ITESM Law School) Editorial Board

VII.   Languages

- Mother tongue: Spanish
- Other languages: English, fluent. French, full working knowledge.

3

# Exhibit A